**FEDERAL ELECTION COMMISSION,**
Plaintiff,

v.

**COMMITTEE OF 100 DEMOCRATS,**
et al., Defendants.

Civ. A. No. 92–2245.

United States District Court,
District of Columbia.

Sept. 30, 1993.

Lawrence Mark Noble, Kenneth E. Kellner, Stephen E. Hershkovitz, and Richard Blair Bader, Federal Election Com'n, Office of Gen. Counsel, Washington, DC, for plaintiff.

Dominick A. Fusco, pro se.

### MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

This is an action brought by the Federal Election Commission ("Commission" or "FEC") under 2 U.S.C. § 437g(a)(5)(D) to enforce two conciliation agreements entered into by the defendants with the Commission in settlement of violations of the Federal Election Campaign Act of 1971, as amended (the "Campaign Act" or "Act"). The Commission filed a motion for summary judgment on July 26, 1993. After carefully considering this motion, the defendants' opposition, the reply, and the entire record in this matter, the Court will grant the Commission's motion for summary judgment.

## I. BACKGROUND

There is no genuine dispute regarding the material facts of this case. They are as set forth below.

### A. Prelude to Conciliation Agreements

In October 1990, the Commission received a complaint alleging that Throw the Rascals Out ("TRO") and Committee of 100 Democrats ("100 Democrats") had violated various provisions of the Campaign Act. FEC Exh. 1. The Commission notified TRO and its treasurer at the time, Dennis G. Wedra, Jr., and 100 Democrats and its treasurer, Dominick A. Fusco, of its receipt of the complaint. FEC Exh. 2. TRO is the principal campaign committee of Dominick A. Fusco, a candidate for the United States House of Representatives in New York's 19th Congressional District. See 2 U.S.C. § 431(5). TRO has been renamed as the Committee to Elect Fusco to Congress, and Mr. Fusco is its treasurer. FEC Exh. 3. 100 Democrats is a political committee within the meaning of 2 U.S.C. § 431(4).

The Commission, pursuant to 2 U.S.C. § 437g(a)(2), found reason to believe that TRO and Mr. Wedra, as its treasurer, violated 2 U.S.C. §§ 441d(a), 434(b) and 441a(f), and that 100 Democrats and Mr. Fusco, as its treasurer, violated 2 U.S.C. §§ 433(a), 434(a), and 441a(a). FEC Exh. 4 & 8. Those political committees and their treasurers were notified of the Commission's finding (FEC Exh. 5) and they requested pre-probable cause conciliation of the alleged violations, FEC Exh. 6 & 7, pursuant to 2 U.S.C. § 437g(a)(4)(A)(i) and 11 C.F.R. § 111.18(d). The Commission granted their requests. FEC Exh. 9.

On January 22, 1992, Mr. Wedra resigned as treasurer of TRO. FEC Exh. 10. On January 29, 1992, the FEC received a letter from Mr. Fusco stating that he "has taken control of the books and records of [TRO] and has prepared the enclosed report and will continue to do so until all committee obligations have been satisfied." FEC Exh. 11.

### B. The Agreements

On December 19, 1991, Mr. Fusco executed an agreement with the Commission on behalf of 100 Democrats and himself to conciliate those violations of the Act with which they had been charged. FEC Exh. 12 ("100 Democrats Agreement"). Both 100 Democrats and Mr. Fusco, as its treasurer, are designated as "Respondents" in the agreement. The agreement, in pertinent part, states that "Respondents will file a statement of organization with the Commission pursuant to 2 U.S.C. § 433(a) and, thereafter, shall file scheduled reports disclosing all contributions received and disbursements made pursuant to 2 U.S.C. § 433(b)." Id. at ¶ VI(2). The agreement further provides that it is to become effective as of the date that all parties have executed it and the Commission has approved it. Id. at ¶ VIII. Finally, it gave 100 Democrats and Mr. Fusco thirty days from the effective date to comply with its requirements. Id. at ¶ IX.

On April 1, 1991, Mr. Fusco executed a conciliation agreement with the Commission on behalf of TRO to conciliate those viola-

tions of the Act with which that organization and its treasurers had been charged. FEC Exh. 13 ("TRO Agreement").[1] The agreement names both TRO "and its treasurer" as "Respondents." It also specifically states that "Dominick A. Fusco is the treasurer of Throw the Rascals Out. Previously, until January 22, 1992, Dennis G. Wedra, Jr., was the treasurer of Throw the Rascals Out."[2] *Id.* at ¶ IV(2). The agreement provides, in pertinent part, that "Respondents will pay a civil penalty to the Federal Election Commission in the amount of three thousand and five hundred dollars ($3,500.00), pursuant to 2 U.S.C. § 437g(a)(5)(A) . . . ." *Id.* at ¶ VI. The payments were to be made in ten consecutive monthly payments of $350.00 beginning thirty days from the effective date of the agreement. *Id.* The Commission, however, reserved the right to accelerate any remaining payments and cause the entire balance to become due upon ten days written notice to the Respondents should the Commission not receive timely payment of any installment. *Id.* The agreement further provides that it is to become effective as of the date that all parties have executed it and the Commission has approved it. *Id.* at ¶ VIII.

On April 21, 1992, the Commission approved the two conciliation agreements. FEC Exh. 16. They were executed by counsel for the Commission on May 4, 1992. FEC Exh. 12 & 13.

### C. Breach of the Agreements

The material facts surrounding the breach of the agreements are not a matter of genuine dispute. Neither 100 Democrats nor Mr. Fusco filed a Statement of Organization with the Commission until December 21, 1992. FEC Exh. 15. Moreover, the Commission claims, those defendants have failed to this date to file any scheduled reports disclosing

contributions received and disbursements made pursuant to 2 U.S.C. § 433(b). FEC Memorandum in Support of Motion for Summary Judgment ("FEC Mem.") at 8; Reply at 1; FEC Exh. 24. Mr. Fusco, in his Answer to the Commission's complaint, ("Answer") denies that 100 Democrats failed to file scheduled reports disclosing contributions received and disbursements made pursuant to 2 U.S.C. § 433(b). Answer at 2. Additionally, he claims, in his Opposition to the Commission's Motion for Summary Judgment ("Opposition") (at 4) and a document filed with this Court styled "Supplemental Affirmation in Opposition to Motion," ("Supplement") (at 1) that 100 Democrats filed a report with the Commission showing no federal campaign activity by the committee. The Commission, in support of its claim, submitted the July 22, 1993 sworn declaration of Kent C. Cooper, the Commission's Assistant Staff Director of its Public Disclosure Division. Mr. Cooper states that he has searched for and discovered no reports of receipts and disbursements by Committee of 100 Democrats. FEC Exh. 24. Mr. Fusco and 100 Democrats, have submitted no evidence whatsoever in support of their claim.

Pursuant to the TRO Agreement, the initial payment of $350.00 was due to the Commission on June 1, 1992. FEC Mem. at 8, n. 3. The penalty was not paid as scheduled, and on July 15, 1992, the Commission notified defendants TRO and Mr. Fusco that it determined to accelerate the remaining payments of the civil penalty. FEC Exh. 23. It is undisputed that as of this date the civil penalty of $3500.00 has not been paid. FEC Mem. at 8.

### D. The Present Suit

The Commission instituted this suit on October 5, 1992, seeking declaratory, injunctive,

---

1. While it appears to be a matter of some dispute between the Commission and Mr. Fusco as to whether Mr. Fusco or Mr. Wedra was responsible for certain of the violations underlying the TRO Agreement (i.e., the solicitation of an unlawful contribution to TRO), the Court does not need to make a determination as to such matters. The Act specifically provides that the underlying violations are not at issue in litigation to enforce conciliation agreements. 2 U.S.C. § 437g(a)(5)(D).

2. Mr. Fusco, under the signature line of the TRO Agreement, lists his position with the organization as "candidate." FEC Exh. 13 at 7. This designation, however, is in no way inconsistent with the force of the paragraph stating that he is the organization's treasurer. Indeed, Mr. Fusco is currently the undisputed treasurer of successor committee to elect himself to Congress. FEC Exh. 3.

4

and other appropriate relief pursuant to sections 307(a)(6), 309(a)(6)(A) of the Campaign Act against the defendants for their failure to comply with the conciliation agreements described above.

The primary legal defense raised in this litigation has been that Mr. Fusco signed the agreements in a "representative capacity," Answer ¶ 7, and that therefore, he is not personally liable for carrying out the committees' obligations to file reports or for paying TRO's $3,500.00 civil penalty. Mr. Fusco claims, as a factual matter, that he is not responsible for the unlawful campaign contribution underlying the TRO Agreement. Moreover, he claims that the Commission "arbitrarily" designated him treasurer of TRO without his consent after Mr. Wedra's resignation. Opposition to Motion for Summary Judgment ("Opposition") at 2–3. As a consequence, he argues that he should have no personal liability for TRO's failure to pay the civil penalty.

Defendants also claim that 100 Democrats failed to file the agreed upon scheduled reports due to an error in its Statement of Organization which it purports either to have resolved or be in the process of resolving. See Opposition at 4; Supplement at 1. Consequently, defendants argue that their late filing is not a willful attempt to ignore the law. Finally, they argue that in any event, the 100 Democrats financial reports are on file with the New York State Board of Elections for public perusal, and that "the Committee spent no money for federal [campaigns], and the F.E.C. is using a sledgehammer to squash a speck." Opposition at 5.

The Commission's response to these arguments is basically twofold. First, it points out that assertions regarding the merits of the underlying violations resolved by the conciliation agreements are irrelevant to this proceeding. The only purpose of this litigation is to enforce the agreements. Under the Campaign Act, for the Commission to obtain relief in this case, it need only establish that those who entered into the agreement violated it. 2 U.S.C. § 437g(a)(5)(D). Consequently, the Commission argues, the

Court cannot now review the merits of defendants' arguments that they are not responsible for the underlying violations of the Act. FEC Mem. at 13; Reply at 2.[3]

Second, because there is no dispute over the validity of the agreements, or that the defendants have not complied with them, the only cognizable legal defense that has been put forth is that Mr. Fusco is not personally liable for complying with them. FEC Mem. at 9. The Commission argues that this defense must fail as a matter of law. As a party and signatory to the agreements, Mr. Fusco is personally responsible for the defendant committees' compliance with them. Id. at 9–10. The Commission further argues that under the regulatory scheme established by the Campaign Act, Mr. Fusco, as treasurer of the defendant committees, is in the unique position of being the only individual in either organization who can fulfill their obligations to file their required reports and is in the unique position of being able to seek funds and expend them in order to pay the agreed upon penalties. Id. at 10–13. See 2 U.S.C. §§ 432, 434. Consequently, the Commission argues, Mr. Fusco is a fortiori liable for the defendant committees' failure to comply with the conciliation agreements.

### E. Relief Sought

The Commission seeks an Order requiring the following relief:

(1) that defendants 100 Democrats and Mr. Fusco, as treasurer, comply fully with the terms of their conciliation agreement by filing scheduled reports disclosing all contributions received and disbursements made pursuant to 2 U.S.C. § 433(a);

(2) that defendants Committee to Elect Fusco to Congress (the successor to TRO) and Mr. Fusco comply with the terms of the TRO Agreement by paying the $3,500.00 penalty to the Commission;

(3) that defendants 100 Democrats and Mr. Fusco pay the Commission $5,000.00 in civil penalties pursuant to 2 U.S.C. § 437g(a)(6)(A) for violating the 100 Democrats Agreement;

3. The Commission also strongly contests Mr. Fusco's assertions that he is not responsible for the violations underlying the conciliation agreements. FEC Mem. at 13–16.

(4) that defendants Committee to Elect Fusco to Congress and Mr. Fusco pay the Commission $5,000.00 in civil penalties pursuant to 2 U.S.C. § 437g(a)(6)(A) for violating the TRO Agreement; and

(5) that all defendants be permanently enjoined from future violations of their respective conciliation agreements.

## II.  DISCUSSION

Summary judgment must be awarded where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *White v. Fraternal Order of Police,* 909 F.2d 512, 516 (D.C.Cir.1990). The Court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* In this case, there are no genuine issues concerning any material facts in this litigation. Furthermore, the Court holds that the Commission is entitled to a judgment as a matter of law.

### A.  Merits of the Underlying Violations

█ As a threshold matter, the Court holds that the merits of the underlying violations resolved by the conciliation agreements are irrelevant to this proceeding as a matter of law. The Act provides that

> In any case in which a person has entered into a conciliation agreement with the Commission under [2 U.S.C. § 437g(a)(4)(A) ], the Commission may institute a civil action for relief under [2 U.S.C. § 437g(a)(6)(A) ] if it believes that the person has violated any provision of such conciliation agreement. For the Commission to obtain relief in any civil action, the Commission need only establish that the person has violated, in whole or in part, any requirement of such conciliation agreement.

2 U.S.C. § 437g(a)(5)(D). As the undisputed material facts of this case make clear, the defendants have not complied with the two conciliation agreements. Thus, the only legal issues before the Court are (i) whether Mr. Fusco is personally liable for violating those agreements, and (ii) the amount of civil penalties that should be awarded against the defendants.

### B.  No Genuine Disputes Concerning the Material Facts

There is a superficial dispute between Mr. Fusco and 100 Democrats and the Commission as to whether 100 Democrats failed to file scheduled reports disclosing contributions received and disbursements made pursuant to 2 U.S.C. § 433(b). While the question of whether the required reports have or have not been filed is material because it might affect the outcome of the case, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the dispute is not "genuine." There is no evidence that any such reports exist or have been filed.

The Commission has met its burden of production by submitting Mr. Cooper's July 22, 1993 declaration stating that he has searched for and discovered no reports of receipts and disbursements by Committee of 100 Democrats. FEC Exh. 24. Mr. Fusco and 100 Democrats, on the other hand, fail to avail themselves of even the simple expedient of attaching a file-stamped copy of this alleged report to the papers they have filed with this court. As such, the evidence before the Court is not such that a reasonable jury could return a verdict for the defendants. *Id.* At most, Mr. Fusco and 100 Democrats have made a bare claim that a factual controversy still persists in this case. This is insufficient to withstand a motion for summary judgment. *Alyeska Pipeline Svc. Co. v. United States Environmental Protection Agency,* 856 F.2d 309, 314 (D.C.Cir.1988) (adequately supported motion for summary judgment not defeated simply by bare opinion or unaided claim that factual controversy persists); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (purpose of summary judgment rule to isolate and dispose of factually unsupported claims and defenses). Consequently, there can be no genuine issue with respect to the fact that as of July 22, 1993, Mr. Fusco and 100 Democrats had not filed the required reports.[4]

_____

4.  Moreover, even if they have filed any reports

since that date, this would be completely irrele-

## C.  Mr. Fusco's Liability

The Campaign Act permits the Commission to enter into conciliation agreements with persons alleged to have violated the Act either when it finds "probable cause" to believe that a violation has occurred, 2 U.S.C. § 437g(a)(4)(A)(i), 11 C.F.R. § 111.18(a). It may also enter into a conciliation agreement prior to a finding of probable cause if the respondent requests it. 11 C.F.R. § 111.-18(d). Conciliation agreements entered into prior to a finding of probable cause "have the same force and effect as a conciliation agreement reached after a Commission finding of probable cause to believe." *Id.* These agreements may specify measures that will rectify the violations. *See* 2 U.S.C. § 437g(a)(4)(A)(i). The Act also clearly states that such agreements may provide "that the person involved in such conciliation agreement shall pay a civil penalty...." 2 U.S.C. § 437g(a)(5)(A).

■ The TRO Agreement unequivocally provides that Mr. Fusco may be held personally liable for the underlying civil penalty. FEC Exh. 13 at ¶ IV. The 100 Democrats Agreement likewise provides that Mr. Fusco may be held personally liable for that committee's failure to file the scheduled reports under section 433(b) of the Act. FEC Exh. 12 at ¶ VI(2). As the Commission correctly states:

The agreements set forth without equivocation the obligations of the parties to comply with those agreements. By executing the agreements, Mr. Fusco, treasurer of the defendant committees, bound himself and the committees to carry out the obligations contained in the agreements. Indeed, the agreements are unambiguous in their application to Mr. Fusco, who is named as a party to each of the agreements. Mr. Fusco's signature to the two conciliation agreements is an unequivocal agreement in exchange for the Commission's closing of its administrative proceedings against the defendant committees. The failure to comply subjects the parties, including Mr. Fusco, to an order enforcing the conciliation agreements pursuant to 2 U.S.C. § 437g(a)(5)(D).

FEC Mem. at 9–10. Because the Court holds that Mr. Fusco's status as a party to each of the agreements subjects him to personal liability for their violation, the Court does not need to reach the question of whether Mr. Fusco's status as treasurer of the defendant political committees subjects him to personal liability for correcting their violations of the Act.[5] Mr. Fusco's status as treasurer of the defendant committees is of limited relevance. It is relevant insofar as the substitution of the word "treasurer" for his name in the TRO Agreement results in his being named as a "respondent" who must

vant to a determination of their liability in this case. By filing such reports well after the time called for in the conciliation agreement and, indeed, after the filing of dispositive motions nearly one year following initiation of the present suit, the defendants could in no way mitigate the civil penalties to be imposed against them for violating the agreement. To hold otherwise would be to permit those who breach conciliation agreements to force the Commission and the courts to expend the very resources conciliation agreements are designed to conserve. The only relevance of such a development would be to bring the defendants into compliance with the second paragraph of the attached Order.

5.  *Cf. Federal Election Comm'n v. John A. Dramesi For Congress Comm.*, C.A. No. 85–4039 (MHC), slip op. (D.N.J. Sept. 5, 1990) (FEC Exh. 17). In *Dramesi*, the Commission brought a contempt action against both the treasurer of a defunct political committee and the committee itself for their failures to pay distinct penalties assessed against each of them. *See also Federal Election Comm'n v. John F. Dramesi For Congress*, 640 F.Supp. 985 (D.N.J.1986). The court held the treasurer in contempt for his failure to pay fines assessed against him personally for his violations of the Act in his capacity "as treasurer." It rejected his defense that the unpaid judgment against him pertained to him only in his capacity as treasurer of the committee and not to him personally, and that therefore he was not liable to pay the underlying debt since there were no funds in the committee. The court consequently ordered him to pay those fines. The court also found the committee itself to be in contempt for its failure to pay penalties assessed against it arising out of the same violation of the Act. The court, however, held that it would be futile to enforce its finding of contempt against the committee because it was defunct. Notably, the court did not order the treasurer to pay the distinct fines assessed against the committee despite the fact that, as a practical consequence, the judgment against the committee would remain unpaid.

comply with that agreement, and insofar as it enabled him to take measures to bring the defendant committees into compliance with their respective conciliation agreements. *See* 2 U.S.C. § 432(a) (committee must have treasurer in order to raise and expend funds); *id.* § 434(a)(1) (reports of receipts and disbursements must be filed and signed by committee's treasurer).[6]

To conclude, the Court finds that both agreements have been breached in those respects discussed above, and holds that defendant Dominick A. Fusco is jointly liable[7] with 100 Democrats and TRO for the breaches of their respective agreements.

### D. Civil Penalties

The Campaign Act permits the Court to impose civil penalties for violations of conciliation agreements. 2 U.S.C. §§ 437g(a)(5)(D) and (6)(A). The Commission correctly notes that because it may not file suit based on violations of the Act after it has entered into an agreement with a respondent to conciliate those violations, *id.* § 437g(a)(4)(A)(i), such penalties provide an essential incentive for a respondent to comply with the terms of an agreement without the need to resort to judicial action. FEC Mem. at 17. Substantial civil penalties thereby conserve limited Commission and judicial resources.

■ There are relatively few cases discussing the factors which should guide a court's discretion in imposing civil penalties under section 437g(a)(6). The Ninth Circuit has looked to guidance from cases that deal with the imposition of discretionary civil penalties under other federal statutes. In determining the amount of a penalty under section

437g(a)(6)(B) the Ninth Circuit has stated that a district court should consider (1) the good or bad faith of the defendants, (2) the injury to the public, (3) the defendant's ability to pay, and (4) the necessity of vindicating the authority of the responsible agency. *Federal Election Comm'n v. Furgatch,* 869 F.2d 1256, 1258 (9th Cir.1989). The Court believes this to be a sound approach to imposing penalties under section 437g(a)(6)(A) as well.

■ The Court awards the Commission a penalty of $1,000.00 for the violation of the TRO Agreement by TRO and Mr. Fusco in addition to ordering them to pay the $3,500.00 due under the TRO Agreement.[8] Their refusal to comply with their conciliation agreement is admittedly willful, and a substantial penalty is appropriate. Individuals must be deterred from using the conciliation process as a ruse and from using the courts as a mechanism for delay. Thus, Mr. Fusco's bad faith, the harm to the public arising from the expenses associated with enforcing this agreement, and the need to vindicate the Commission's authority in this area all counsel in favor of substantial penalties. *See Furgatch, supra,* 869 F.2d at 1258–60.

■ The Court also awards the Commission a penalty of $1,000.00 for the violation of the 100 Democrats Agreement by 100 Democrats and Mr. Fusco. Defendants are well aware of their obligation to file disclosure reports under both the law and pursuant to the conciliation agreement, yet they continue to fail to do so. Deposition of Dominick A. Fusco, FEC Exh. 18 at 50.

---

6. Mr. Fusco's claims that the Commission "arbitrarily" designated him treasurer of TRO without his consent after Mr. Wedra's resignation, Opposition at 2–3, is manifestly untrue. In signing the TRO agreement, Mr. Fusco stipulated that "Dominick A. Fusco is the treasurer of Throw the Rascals Out." FEC Exh. 13 at ¶ 2. *See also* note 2, *supra.* Mr. Fusco has never alleged that his signature was anything but entirely voluntary.

7. *See Clayman v. Goodman Properties, Inc.,* 518 F.2d 1026, 1031–32 (D.C.Cir.1974) (general rule is that obligation created by promise of several persons is joint unless contrary is made evident); *Welch v. Sherwin,* 300 F.2d 716, 718 (D.C.Cir. 1962) (same).

8. The Court is aware of Mr. Fusco's suggestion that he lacks the ability to pay the agreed upon sum and the additional civil penalties imposed today because he is "retired, on pension, low income," and that these factors account for the monthly payment structure of the TRO Agreement. Opposition at 6. If Mr. Fusco is indeed unable to pay substantial civil penalties, the Court must take this factor into account in assessing them. Nevertheless, the Court agrees with the Commission that, as to the $3,500.00 owed under the TRO Agreement, this proceeding is merely to establish the defendants' liability. Their inability to pay is not a defense. FEC Mem. at 13, n. 4.

The disclosure provisions of the Act serve many important purposes. They provide the electorate with information about where political campaign money comes from and how it is spent, deter corruption, and better enable voters to detect special post-election favors to a candidate's most generous supporters. *Buckley v. Valeo*, 424 U.S. 1, 66–67, 96 S.Ct. 612, 657–58, 46 L.Ed.2d 659 (1976). As the Ninth Circuit stated in *Furgatch, supra*, "[t]he importance of the [Act's] reporting and disclosure provisions, and the difficulty of proving that violations of them actually deprived the public of information, justify a rule allowing a district court to presume harm to the public from the magnitude or seriousness of the violations of these provisions." *Id.* 869 F.2d at 1259 (footnote omitted).

### E. Injunctive Relief

■ The Commission also seeks injunctions against all defendants prohibiting them from committing future violations of their respective conciliation agreements. The propriety of injunctive relief in this case is governed by whether (1) the defendants acted in good faith and with diligence to cure their violations, (2) the task faced by the defendants in complying with their obligations was complex and whether those obligations were difficult to interpret, and (3) an order would have any effect in ensuring better compliance in the future. *Federal Election Comm'n v. California Medical Ass'n*, 502 F.Supp. 196, 204 (N.D.Cal.1980), citing *Federal Election Comm'n v. Committee for a Constitutional Presidency—McCarthy '76*, Fed. Elec. Campaign Financing Guide (CCH) ¶ 9074 at 50,-632 (D.D.C.1979).

■ Given that the defendants have failed to act diligently in the past, do not face a complex obligation, and present the possibility that they may commit further violations, injunctions against such future violations are warranted. *See Federal Election Comm'n v. NRA Political Victory Fund*, 778 F.Supp. 62, 66 (D.D.C.1991).

### III. CONCLUSION

For the foregoing reasons and consistent with the attached order, the Commission's Motion for Summary Judgment is granted.

### ORDER

Upon full consideration of the motion for summary judgment filed by the plaintiff Federal Election Commission, and the defendants' opposition thereto,

This Court FINDS that:

Defendants Committee of 100 Democrats and Dominick A. Fusco violated the terms of a conciliation agreement they voluntarily entered into with the Federal Election Commission; and

Defendants Committee to Elect Fusco to Congress, formerly named Throw the Rascals Out, and Dominick A. Fusco violated the terms of a conciliation agreement they voluntarily entered into with the Federal Election Commission.

Accordingly, it is hereby ORDERED that:

1. Plaintiff's summary judgment motion is GRANTED;

2. Defendants Committee of 100 Democrats and Dominick A. Fusco, as treasurer, shall fully comply with the terms of said conciliation agreement within ten (10) days from the date of entry of this ORDER by filing scheduled reports disclosing all contributions received and disbursements made pursuant to 2 U.S.C. § 433(a);

3. Defendants Committee to Elect Fusco To Congress and Dominick A. Fusco shall fully comply with the terms of said conciliation agreement within ten (10) days from the date of entry of this ORDER by paying $3,500 to the Federal Election Commission;

4. Defendants Committee of 100 Democrats and Dominick A. Fusco shall pay to the Federal Election Commission within ten (10) days from the date of entry of this ORDER, a civil penalty of $1,000.00 for violating the terms of the conciliation agreement they entered into with the Federal Election Commission;

5. Defendants Committee to Elect Fusco to Congress and Dominick A. Fusco shall pay to the Federal Election Commission within ten (10) days from the date of entry of this ORDER, a civil penalty of $1,000.00 for violating the terms of the conciliation agreement

they entered into with the Federal Election Commission;

6. Defendants Committee of 100 Democrats and Dominick A. Fusco are permanently enjoined from future violations of the terms of the conciliation agreement they entered into with the Federal Election Commission;

7. Defendants Committee to Elect Fusco to Congress and Dominick A. Fusco are permanently enjoined from future violations of the terms of the conciliation agreement they entered into with the Federal Election Commission; and

8. The payments described above shall be delivered to the Office of the General Counsel of the Federal Election Commission, located at 999 E Street, N.W., Washington D.C. 20463.